IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                             Cr. No. 14CR0129WJ

MICHAEL DAMEON BLACKBURN
      Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM
## AND OBJECTION TO PRESENTENCE REPORT

    Michael Blackburn, by and through his attorney, Assistant Federal Defender, Margaret Katze, files the following sentencing memorandum and objections to his presentence report.

### MICHAEL BLACKBURN'S LIFE

    Michael Blackburn's life is replete with abandonment and abuse. Abuse, first at the hands of his mother, and then at the hands of his aunt and uncle. He was sexually, physically and emotionally abused. Michael never knew his biological father but he was an alcoholic, a child abuser and had been in prison. His mother had a string of different boyfriends and literally got rid of Michael when he was 5 years old. Birth records indicate that Michael's mother was using cocaine and marijuana at the time of his birth. At the age of five she gave him to his aunt and uncle who lived in another state. She completely abandoned him and never saw him again. But that was not before she was physically abusive toward him. She

1

burned him with a cigarette lighter, she scraped his arm with a knife, pushed his hand in broken glass, she hit him with a belt and her fist and put his hand in an electrical outlet - all by the time he was five years old. Records indicate that when Michael was 5 years old, one of his mother's boyfriend's forced him to have oral sex. Unfortunately things did not improve when he lived with his aunt and uncle. They were extremely physically abusive to Michael. His aunt tried to drown him twice. She lit his arm on fire. She made him watch pornography and sexually abused him. He was also sexually assaulted by a neighbor when he was 11 years old.

Michael was removed from his aunt and uncle's house when he was 13 years old. From that point on he lived in residential treatment facilities, group homes and foster care. His aunt and uncle had minimal contact with Michael for the first few months after he left their house and then they disappeared, never to have contact with them again. His aunt informed the facility that she was pregnant with another man's baby and she was leaving her husband and moving out of state to be with the father of her new baby. When the reality of being completely abandoned hit Michael, he deteriorated. At the time of the abandonment, his aunt had a pass to bring him home for Christmas but she did not show up and she did not call.

By the age of 13, he had already tried to kill himself on more than one occasion including taking rat poison. He was hospitalized for a suicide attempt. He was diagnosed by the Department of Children's Services in Nashville, Tennessee with depression, with the

evaluator noting that Michael, not yet 14 years old, did not see any reason to live. He was committed to state custody without a legal guardian. He was admitted to a residential treatment facility that specializes in serving children with histories of trauma, neglect, physical and sexual abuse. When he was admitted to the facility, the counselor noted that Michael thought he had 3 siblings but he did not know their ages, their whereabouts or if they all had the same father.

He was put on a number of medications: Wellbutrin, for depression, Risperdal, used for bipolar disorder, Topamax, used to prevent seizures, Neurontin, an anticonvulsant that is used to block nerve pain. He was later prescribed: Paxil, treats depression and anxiety, and Lithium to treat bipolar disorder.

Michael was identified as a slow learner and was labeled learning disabled. When he was further tested at the age of 14 years old, he was found to have the receptive and expressive language skills of an 8 year old. The facility was working on a home placement, and possible adoption, when a man who called himself Michael's uncle, but who the facility believed to be his father, got in contact with Michael telling him that he wanted Michael to come and live with him. Michael never heard from this man again and was once again abandoned.

At 18 years old, when the facility was no longer able to house him, he was sent out to live on his own. An 18 year old man, who had suffered terrible sexual, physical and emotional abuse. An 18 year old man who had been abandoned over and over again.

## OBJECTIONS TO PRESENTENCE REPORT

The presentence report suggests that it is appropriate to enhance Michael Blackburn's sentence under both U.S.S.G. §2G2.2(b)(5) and §4B1.5(b)(1). He objects to the imposition of both enhancements. To impose both would be double counting. Both enhancements punish the same conduct. The government argues that the enhancements serve different purposes but both are triggered by the very same conduct. In, *U.S. v. Bruffy*, 2012 WL 1003503(W.D. Va. Mar. 26, 2012), cited by the government, involving consideration of the same two guideline sections, the court found that it was appropriate **not** to consider the enhancement under §4B1.5(b)(1) in sentencing the defendant. (Emphasis added.) The court found that without that enhancement the defendant's offense level sufficiently accounted for his offense conduct.

Mr. Blackburn objects to paragraph 62 of the presentence report. Probation suggests that a 5 level enhancement is appropriate because the offense involved the distribution for receipt or expectation of receipt, of a thing of value, but not for pecuniary gain. Probation states that the defendant admitted he traded child pornography images and videos via email for other child pornography. That is an incorrect analysis and conclusion. Michael did send pornographic images and he did receive pornographic images but that does not mean that when he sent images he did so **for** the receipt, or expectation of receipt, of a thing of value. He did it for the excitement, the status, and to talk to and be part of a community. The 5 level increase should not be given.

**REASONS TO GIVE LESS THAN A LIFE SENTENCE**

The government, though asking for a 120 year prison sentence, is in effect, requesting that Mr. Blackburn be sentenced to serve the rest of his life in prison. For the following reasons that would not be a just, appropriate or reasonable sentence:

1. When Mr. Blackburn was arrested he was absolutely cooperative and forthcoming. He did not try to deflect blame at all. He completely accepted responsibility and showed great remorse, recognizing that what he did was, in his own words, evil. He provided information, during his interrogation, that could very well have led to the apprehension of other pornographers and individuals sexually abusing children. He gave a lengthy and detailed statement providing information that law enforcement did not, and would not have otherwise gotten. The Court can consider a departure under U.S.S.G. §5K2.16 because Michael's disclosures were not motivated by imminent uncovering. Michael did not make his detailed disclosure because he knew that law enforcement would inevitably uncover all the details. He made them because he felt horribly guilty and very remorseful.

2. Though what happened in this case was horrible and heartbreaking, nobody was killed. A life sentence should be reserved for when someone intentionally kills another person. There should be a distinction where that did not happened. Congress did not provide for a life sentence for any individual offense Michael Blackburn committed. The highest statutory sentence is 30 years. It was therefore not necessarily in Congress's contemplation that a life sentence should be imposed in a case like this.

3. In *U.S. v. Eddie Chaco Jr.*, CR10-3463JB, a case where the defendant sexually abused his daughter on multiple occasions, District Judge James Browning, found that although the guidelines called for a sentence of life imprisonment, that punishment was not appropriate. He sentenced the defendant to 516 months, because he found that the possibility of release would give the defendant "something for which to live and a reason to try to reform his ways." The court went on to say "It is difficult to take away all hope for rehabilitation, and the Court believes it should be cautious when presented with such a guideline sentence." And finally, the court found that such a lengthy sentence was "sufficient to protect the public, because he will be released so late in life that it is unlikely he will re-offend." Additionally, in that case, unlike in Michael Blackburn's case, the defendant had a substantial prior criminal history and the defendant did not accept responsibility for his unlawful conduct. Michael Blackburn has no criminal history and he absolutely accepted responsibility for his unlawful conduct.

4. "Sex offenders, the seemingly worst of the worst among criminal offenders today, are commonly, albeit incorrectly, assumed to be highly recidivistic." R. Tewsbury, W. Jennings, & K. Zgoba, Final Report on Sex Offenders: Recidivism and Collateral Consequences (Sept. 2011). That study found that " . . . sex offenders have relatively low rates of recidivism, typically significantly lower than non-sex offenders." Specifically the study found that "none of the sex offender sub-groups (including pedophiles) had a sex-offense specific (as opposed to other classes of offense) recidivism rate greater than six

percent." Michael Blackburn is currently 30 years old. He will be an old man when he leaves prison if he is given a lengthy prison sentence. His age, combined with the study's results that sex offenders are less likely to recidivate than other offenders, makes him a lesser risk in the future. Also, Michael is not a predator in search of children to abuse. He is not a danger to the general public. What happened was situational. Strict supervised release conditions, with the diligence of the probation officer could ensure he would never be in a living situation where he would endanger a child.

     5. Obviously it is impossible for this Court to predict whether Michael will be a danger after he is released from a less-than-life sentence. The government will determine at the time he has finished serving his sentence whether he is too dangerous to be released. Under 18 U.S.C. §4248, the government could initiate a proceeding to civilly commit him if the government and a court believe he is a danger to the community. A more accurate determination can be made at that time. It would be wrong for the Court to make that determination now and preclude any chance for Michael to return to society when he is not a danger to anyone.

## RESTITUTION

     There are two separate restitution issues: the restitution suggested by probation in Mr. Blackburn's presentence report and the restitution requested by the United States Attorney's Office in its sentencing memorandum. Mr. Blackburn objects to both.

**PROBATION**

First, probation, in paragraph 149 of the presentence report suggests that the following restitution be ordered: Marineland - Sarah - $51,500, Angela - $11,980.20-$16,400.20, and Lighthouse - Amanda - $23,500. *U.S. v. Paroline*, 134 S.Ct.1710 (2014) controls on this issue. There, the Supreme Court very clearly said, that an individual defendant may only be ordered to pay restitution relative to his "role in the causal process that underlies the victim's general losses." *Id.,* at 1727. In *Paroline*, where the defendant possessed images of the woman seeking restitution, as here, the Court went on to say "The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like Paroline and the entirety of the victim's losses from trade in her images, which are the product of thousands of offenders." *Id.* Further, the Court stated " . . . the statute states a strong restitutionary purpose; but that purpose cannot be twisted into a license to hold a defendant liable for an amount drastically out of proportion to his own causal relation to the victim's losses." *Id*. at 1729. That is exactly what probation is suggesting in Michael Blackburn's case. "[D]efendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others." *Id.* Michael Blackburn is not responsible for the original abuse of these individual, nor the original posting of the images. Typically, in counts such as these, the government has agreed that $1,00 restitution to each victim with an outstanding claim is appropriate. That amount has been arrived at by estimating 5 hours of therapy (every time the victim is, perhaps unfortunately, advised that

8

someone else has viewed images of that person) at a rate of $150 an hour plus $50 per session for travel.  This has been found to be reasonable given what Michael Blackburn did.

## GOVERNMENT

Second, the government, in their sentencing memorandum, without any facts or documentation, requests restitution for the two minor victims (presumably M.M. and A.M.) in the amount of $210,012 each.  It should be noted that probation specifically indicates in paragraph 150 of the presentence report that no claims of restitution have been made on behalf of M.M. and A.M.  The government reaches this figure based only on an article from an International Society for Prevention of Child Abuse and Neglect journal.

The government has not proven costs to the particular children involved in this case.  It cannot rely on what may happen in general to abused children.  It must show these individual children will suffer these costs.  The government has provided no documentation whatsoever.  For example, the government requests restitution to pay for criminal justice costs.  Those costs only arise if the child gets in trouble with the criminal justice system.  It seems far-fetched to say the court can predict either child will end up in that situation.

The government's argument is speculative and not specifically victim related.  18 U.S.C. §2259, although ordering restitution, does not authorize costs that have not, or will not incur.  "[A] restitution amount must be specific in the dollar amount that is supported by evidence in the record."  *U.S. v. Julian,* 242 F.3d 1245, 1248 (2001). "[T]he district court must support its restitution order with findings of fact in the record." *Id.*  That is not the case

here. In *Julian*, as in this case, "The presentence report contained no evidence regarding the victim's need for future counseling or the estimated cost of that counseling." *Id.* The 10th Circuit found that "[a] restitution order entered without proof of loss is clearly erroneous." *Id.* The government has the burden of demonstrating the amount of the victims' loss. *U.S. v Paroline,* 134 S.Ct.1710 (2014) discussing 18 U.S.C. §3664(e). The government has only speculated, they have provided no proof and have not met their burden.

Finally, regarding restitution, the factor of enabling payment of restitution, as set out in 18 U.S.C. §3553(a)(7), favors a sentence of less time in prison so that Michael can earn money to pay his restitution.

## CONCLUSION

Michael Blackburn is requesting that this Court sentence him to 504 months in prison. Such a sentence is extremely lengthy but will allow for the possibility of release. If released as an aged man he will not be a threat or danger to society. Any danger that may exist can be controlled for by probation. 18 U.S.C. §3553(a) specifically states: The court shall impose a sentence sufficient **but not greater than necessary** to comply with the forth factors in that section. (Emphasis added.)

| | |
|---|---|
| I HEREBY CERTIFY THAT on the 16th day of August 2015, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Marisa A Ong to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. | Respectfully submitted,<br><br>FEDERAL PUBLIC DEFENDER<br>111 Lomas NW, Suite 501<br>Albuquerque, NM 87102<br>(505) 346-2489 |

I HEREBY CERTIFY THAT on the 16th day of August 2015, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Marisa A Ong to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Danielle Padilla, USPO

  /s               

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

  /s  [Electronically filed]
MARGARET A. KATZE, AFPD
Assistant Federal Public Defender